348 So.2d 999 (1977)
Charlie HOPKINS, Plaintiff-Appellant,
v.
Bill KEITH and the Shreveport Times, Defendants-Appellees.
No. 13272.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1977.
Rehearing Denied, August 29, 1977.
*1000 Barry E. Edwards, Shreveport, for plaintiff-appellant.
Tucker, Martin, Holder, Jeter & Jackson by Robert McLean Jeter, Jr., Shreveport, for defendants-appellees.
Before BOLIN, PRICE and HALL, JJ.
Rehearing En Banc ,Denied, August 29, 1977.
HALL, Judge.
Plaintiff, Charlie Hopkins, brought suit to recover damages against the publisher of The Shreveport Times and one of its reporters, Bill Keith, for allegedly libelous statements contained in two news articles published in The Shreveport Times. The articles characterized plaintiff as a "convicted gambler" and as having been "convicted for running a gambling game." On findings that the statement that plaintiff was a convicted gambler is true, that defendants were justified in relying on a statement of the Clerk of the Shreveport City Court that a bond forfeiture constituted a conviction, and that defendants were without fault, the district court granted defendants' motion for summary judgment and dismissed plaintiff's suit. Plaintiff appealed. For reasons set forth in this opinion, we affirm.
The articles complained of were published in the newspaper on June 2 and June 5, 1976, and were the second and third of three articles which referred to plaintiff. The articles were written pursuant to intensive investigation and reporting by The Shreveport Times of the activities of the Shreveport Department of Public Safety and its then Commissioner, George D'Artois.
The first article was published May 16, 1976. The tenor of the article is that Commissioner D'Artois gave preferential treatment in directing the granting of liquor permits to a number of persons who did not *1001 meet all requirements for the permits. One of the persons referred to is plaintiff who is described as having several arrests and as having answered "no" to a question that asked if he had ever been convicted for, among other things, letting a disorderly place. The article states that records in the criminal clerk's office show that Hopkins forfeited bond on that charge on January 9, 1975, and Clerk Ed Crump said that bond forfeiture constitutes a conviction.
The next article appeared on June 2 and was headlined "Hopkins Liquor Permit Seized". The article begins: "The mystery surrounding why convicted gambler Charlie Hopkins received a city liquor license took a new twist Tuesday." The article reports that plaintiff's license was picked up by city detectives and that "Hopkins' record shows several arrests on charges of operating gambling games, letting a disorderly house and selling beer and whiskey without a license. He was convicted for running a gambling game." The article goes on to state, as did the first article, that Hopkins answered "no" to a question that asked if he had ever been convicted for running a gambling house although records in the criminal clerk's office show that Hopkins forfeited bond on that charge and Clerk Ed Crump said that bond forfeiture constitutes a conviction.
The third article appeared in the Times on June 5 and was headlined "Local Man Sues State for Liquor Permit." The article reports that plaintiff had filed suit to attempt to force the state to grant him a beer and liquor permit. The article repeats the statement contained in the second article that Hopkins' record shows several arrests on charges of operating gambling games, letting a disorderly house, and selling beer and whiskey without a license, and that he was convicted for running a gambling game. The article does not contain the explanation that the clerk said that bond forfeiture constitutes a conviction.
The statements contained in the second and third articles which plaintiff contends are false and libelous per se are that he is a "convicted gambler" and that he was "convicted of running a gambling game."
The affidavits, depositions, exhibits and other material filed in connection with the motion for summary judgment disclose the following undisputed facts:
(1) The records of the Shreveport City Court disclose that on January 10, 1963, plaintiff was fined $10 on a charge of gambling. (By counter-affidavit, plaintiff admits the 1963 arrest on a charge of gambling, but denies that he ever appeared in court or paid a fine. The fact is, however, that the public records disclose a conviction on a charge of gambling in 1963).
(2) The records of the Shreveport City Court disclose that on January 17, 1966, plaintiff was arrested and charged with gambling with dice and on January 20, 1966 forfeited bond in the amount of $17.50.
(3) The records of the Shreveport City Court disclose that on December 10, 1971, plaintiff was arrested and charged with carrying a concealed weapon, a liquor violation, and gambling with dice and was released on bond of $705, but there is no disposition of these charges.
(4) The records of the Shreveport City Court disclose that on January 2, 1975, plaintiff was arrested and charged with letting a disorderly house and on January 9, 1975 forfeited bond of $168.
(5) The records of Bossier City disclose that on March 22, 1971, plaintiff was charged with gambling and on March 25, 1971, he forfeited bond of $25 in the City Court of Bossier City.
(6) Prior to publication of the articles in question, reporter Bill Keith asked Clerk of Court Ed Crump about the effect of a bond forfeiture and was told by the Clerk that a bond forfeiture constituted a conviction.
Among the defenses posed by defendants in their motion for summary judgment is the defense of truth or substantial truth.
Truth or substantial truth is an absolute defense to a libel action. LSA-R.S. 13:3602; Otero v. Ewing, 165 La. 398, *1002 115 So. 633 (1927); Wilson v. Capital City Press, 315 So.2d 393 (La.App. 3d Cir. 1975), writ denied La., 320 So.2d 203 (1975); Rosen v. Capital City Press, 314 So.2d 511 (La.App. 1st Cir. 1975). The availability of this defense is constitutionally mandated when applied to the reporting of information contained in official public records. "At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." Cox Broadcasting Corporation v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). In reporting matters of public interest involving legal and judicial proceedings and records some errors and inaccuracies are bound to occur in the use of technical terms. Not every error or inaccuracy should be actionable. The error should be a significant variation from the truth to give rise to liability. In order to avoid a "chilling effect" on the exercise of First Amendment rights, the media must be allowed "breathing space."
The characterization of plaintiff as a "convicted gambler" is true. As a matter of public record, plaintiff was convicted on a charge of gambling in 1963.
The statement that plaintiff was "convicted for running a gambling game", viewed in the entire context of the articles and in the context of the actual facts as disclosed by the public records, is substantially true. Reporting the forfeiture of a substantial bond by the plaintiff on a charge of letting a disorderly house, arising out of allowing gambling on the premises, as a conviction on that charge is not a significant variation from the truth. While a bond forfeiture is not technically or legally the same as a conviction and carries significant legal distinctions, the similarities between the two, particularly in the lay mind, cannot be overlooked. A conviction is a judicial determination of guilt. A forfeiture of bond is a decision by the person charged not to appear for trial, thereby avoiding a judicial determination of guilt or innocence. The Legislature has equated bond forfeiture to convictions in some instances, such as for the purpose of suspending or revoking a motorist's driver's license for multiple traffic offenses. LSA-R.S. 32:414, 1472(C). Viewed in context, the error is relatively insignificant and a relatively minor deviation from the truth.
In viewing the content of the three articles referring to plaintiff, it is significant to note that in the first two articles, although the term "convicted" was used, the articles accurately reported the facts concerning the bond forfeiture and the Clerk's explanation.
In Rosen, supra, the plaintiff was reported as having been charged with "illegal distribution of narcotics" whereas the charge actually was "unlawful distribution of biphetamine and obedrin", which substances are not narcotics. Summary judgment for the defendants was affirmed on a finding of substantial truth.
There are no genuine issues of material fact related to the publication of the articles, the content of the articles or the status of the public records relating to plaintiff's history of arrests, charges and disposition thereof. The articles being substantially true, without significant variation from the truth, defendants are entitled, as a matter of law, to judgment dismissing plaintiff's suit for damages.
Resolution of this case on the basis of truth or substantial truth makes consideration of other issues urged by the parties unnecessary.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.